1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    FOR THE DISTRICT OF IDAHO

10                        ----oo0oo----

11  THEODORE HOFFMAN, an individual,
                                        NO. CIV. 1:11-120 WBS
12            Plaintiff,

13       v.                              MEMORANDUM AND ORDER RE:
                                        MOTION FOR SUMMARY JUDGMENT
14  OREGON MUTUAL INSURANCE CO.,
    an Oregon corporation,
15

16

17            Defendant.
    _____/
18

19                        ----oo0oo----

20        Plaintiff Theodore Hoffman brought this action against

21  his insurer, defendant Oregon Mutual Insurance, Co. ("Oregon

22  Mutual"), arising out of defendant's allegedly wrongful denial of

23  coverage following an automobile accident in which plaintiff was

24  involved.  Presently before the court is Oregon Mutual's motion

25  for summary judgment pursuant to Federal Rule of Civil Procedure

26  56(c).

27  I.   Relevant Facts

28            Plaintiff, doing business as Hoffman Ranch, purchased a

                                1

business automobile policy from Oregon Mutual ("the Oregon Mutual
policy").  (Budzik Aff. ¶ 2, Ex. A (Docket No. 27).)  This
policy, which was policy number IMO 54 1 8552745, was valid from
March 17, 2009, through March 17, 2010, and contains both
underinsured motorist and auto medical payment coverages.  (Id. ¶
2, Ex. A at OMI 4, OMI 26-27; id. Ex. F at 2.)  The underinsured
motorist coverage is limited to $1,000,000 per accident and the
medical payment coverage was limited to $10,000 per person.  (Id.
Ex. A at OMI 8.)

     The Oregon Mutual policy contains the following notice
provision:

> 2.  Duties In The Event Of Accident, Claim, Suit or Loss
> [Oregon Mutual has] no duty to provide coverage under
> this policy unless there has been full compliance with
> the following duties:
>     a. In the event of "accident", "claim", "suit", or
> "loss", [the insured] must give [Oregon Mutual]
> prompt notice of the "accident" or "loss".
> Include:
>         (1) How, when and where the "accident" or
> "loss" occurred;
>         (2) The "insured's" name and address; and
>         (3) To the extent possible, the names and
> addresses of any injured persons and
> witnesses.

(Id. § IV (A)(2), at OMI 18.)  The policy further cautions that
"No one may bring legal action against [Oregon Mutual] under this
Coverage Form until: (a) there has been full compliance with all
the terms of this Coverage Form."  (Id. § IV (A)(3), at OMI 18.)
These provisions apply to both the underinsured motorist coverage
and the auto medical payment coverage.  (Id. at OMI 27; Ex. F at
3-6.)

     The Oregon Mutual policy provides that both
underinsured motorist and auto medical payment coverages are only

2

available for "covered autos," or "Owned 'Autos' ONLY," which the policy defines as "Only those autos you own . . . .  This includes those 'autos' you acquire ownership of after the policy begins." (Id. at OMI 8, 12.)  The underinsured motorist and auto medical payment coverages expand the definition of an "insured" to include "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'.  The covered 'auto' must be out of service because of its breakdown, repair, servicing, 'loss' or destruction." (Id. at OMI 26; id. Ex. F at 4-5.)

On June 26, 2009, plaintiff was driving a 2005 Ford Ranger pickup that was owned by Frances Woods, plaintiff's girlfriend, not plaintiff. (Id. Ex. B at 1-2, Ex. C at 1.)  This vehicle was not listed in the Schedule of Covered Autos under the Oregon Mutual policy. (Id. Ex. A at OMI 9, Ex. C at 3-5; Brady Aff. Ex. A ("Hoffman Dep.") at 58:11-59:8, 61:17-70:24 (Docket No. 27).)  While driving, plaintiff was rear-ended by a vehicle owned and operated by Desiree Fabello. (Hoffman Dep. at 94:14-95:13; Budzik Aff. Ex. B at 2-3; Hoffman Aff. ¶ 2 (Docket No. 31).)  At the time of the accident, Fabello was insured by Farm Bureau Mutual Insurance Company ("Farm Bureau"). (Hoffman Dep. at 94:14-95:13; Budzik Aff. Ex. B at 2-3.)

Following the accident, plaintiff contacted Farm Bureau in order to obtain coverage for the damage to his girlfriend's vehicle. (Hoffman Aff. ¶¶ 6-7.)  At the time, he did not experience any medical symptoms that he believed were due to the accident and he did not provide Oregon Mutual with any notice of the accident. (Id. ¶¶ 5, 15-16.)

Several months later, in December 2009, plaintiff

learned from his neurosurgeon that he had a bulging disk in his back that was attributable to the June accident and that there was a possibility that he would require surgery in four to five years time.  (Id. ¶¶ 8-9.)  He still did not notify Oregon Mutual of the accident.  (Id. ¶¶ 15-16.)

In the fall of 2010, over a year after the accident, plaintiff contacted Farm Bureau again, this time to inquire about obtaining coverage for his medical expenses associated with the accident.  (Id. ¶ 10.)  Farm Bureau, however, informed plaintiff that it would prefer to pay the claim all at once, and that he should come back to Farm Bureau once he knew the full extent of his damages and medical expenses.  (Id. ¶ 11.)

In September 2010, plaintiff learned that Fabello's policy with Farm Bureau had a $25,000 limit and that his medical expenses would exceed this limit.  (Id. ¶ 12.)  He then contacted GEICO Insurance Agency, which was the insurer for the vehicle owned by his girlfriend that plaintiff had been driving at the time of the accident.  (Id. ¶ 13; Brady Aff. Ex. D.)  He discovered, however, that the GEICO policy on his girlfriend's vehicle had an underinsured motorist limit of $25,000, and therefore he could not recover his full medical expenses under that policy either.  (Hoffman Aff. ¶ 14.)

According to plaintiff, it was at this point that he first realized that he might have a viable claim with Oregon Mutual.  (Id. ¶ 15.)  Upon this realization, he notified Oregon Mutual of the accident and his claim.  (Id. ¶ 16; Budzik Aff. Ex. B at 9-11.)  Oregon Mutual, therefore, did not receive notice of the accident or plaintiff's claim until October 1, 2010.

4

(Hoffman Aff. ¶¶ 15-16, Hoffman Dep. at 86:25-88:15.)

Upon receiving notice of the accident, Oregon Mutual began an investigation by recording two statements by plaintiff, one on October 1, 2010, and a second statement several days later. (Budzik Aff. Exs. B, C, F at 7.) At the time that he made these two statements, plaintiff reported that he could not remember why he had been driving his girlfriend's vehicle at the time of the accident rather than one of the vehicles he owned. (Id. Ex. C at 1-5.) When directly asked if he might have been driving his girlfriend's car because "something was wrong with one of [his] vehicles," he responded, "I don't think so." (Id. Ex. C at 4-5.)

Relying on these statements, Oregon Mutual issued a letter on October 7, 2010, in which it denied coverage on the ground that because plaintiff was not driving a vehicle he owned, he was not driving a covered vehicle at the time of the accident. (Id. Ex. D; Brady Aff. Ex. B ("Reese Dep.") at 23:20-24:8, 30:1-31:6.) Several days later, plaintiff contacted Oregon Mutual to report that his girlfriend had reminded him that the reason he had used her car the day of the accident was because his own vehicle had a flat tire and was therefore unavailable. (Budzik Aff. Ex. G.) It is not clear if plaintiff had notice that Oregon Mutual was denying coverage before or after he contacted Oregon Mutual to report the flat tire. (Hoffman Dep. at 91:11-93:8; Bowers Dep. at 29:9-30:9, 36:13-19; Budzik Aff. Ex. E.)

A month later, Oregon Mutual issued a second letter dated November 10, 2010, again denying coverage. (Budzik Aff. Ex. F.) While the letter denying coverage discussed the lack of

evidence that plaintiff was operating a "temporary substitute for a covered 'auto'" that was "out of service because of its breakdown, repair, servicing, 'loss' or destruction" at the time of the accident, in denying coverage Oregon Mutual relied on plaintiff's failure to provide it with prompt notice of the accident as required under the terms of the policy. (Id. at 11, 13.)

Meanwhile, plaintiff had been engaged in settlement talks with Fabello and Farm Bureau and, on December 20, 2010, plaintiff contacted Oregon Mutual requesting approval of a $25,000 settlement, the bodily damage limit under Fabello's policy. (Id. Ex. B at 9, Ex. G.)  At the same time, plaintiff informed Oregon Mutual that if it "continue[d] to deny coverage," he would "file suit against Oregon Mutual for the damages sustained . . ., compensatory damages, bad faith damages and applicable attorney fees." (Id. Ex. G.)

In response, Oregon Mutual stated that "With respect to the proposed settlement, [Oregon Mutual] having denied coverage cannot and does not object to the proposed settlement and will waive any potential subrogation claim it might have against Ms. Fabello if there was coverage." (Id. Ex. H.)

Plaintiff settled with Fabello for $25,000, and filed suit against Oregon Mutual on March 24, 2011, stating claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and insurance bad faith tort. (Docket No. 1.)

II. Discussion

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1]  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to render a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson, 477 U.S. at 252.

---

[1]     Federal Rule of Civil Procedure 56 was revised and rearranged effective December 1, 2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he standard for granting summary judgment remains unchanged."

1    In deciding a summary judgment motion, the court must
2  view the evidence in the light most favorable to the non-moving
3  party and draw all justifiable inferences in its favor.  <u>Id.</u> at
4  255.  "Credibility determinations, the weighing of the evidence,
5  and the drawing of legitimate inferences from the facts are jury
6  functions, not those of a judge . . . ruling on a motion for
7  summary judgment."  <u>Id.</u>

8    A.   <u>Breach of Contract</u>

9    When interpreting insurance policies, Idaho courts
10 "appl[y] the general rules of contract law subject to certain
11 special canons of construction."  <u>Arrequin v. Farmers Ins. Co. of</u>
12 <u>Idaho</u>, 145 Idaho 459, 461 (2008) (citing <u>Clark v. Prudential</u>
13 <u>Prop. & Cas. Ins. Co.</u>, 138 Idaho 538, 540 (2003)).  When a
14 contract's language is clear and unambiguous, its interpretation
15 and legal effect are questions of law.  <u>Bondy v. Levy</u>, 121 Idaho
16 993, 996 (1992).  Whether a given insurance policy is ambiguous
17 is a question of law to be answered by the court.  <u>Armstrong v.</u>
18 <u>Farmers Ins. Co. of Idaho</u>, 147 Idaho 67, 69 (2009) (citing <u>Purvis</u>
19 <u>v. Progressive Cas. Ins. Co.</u>, 142 Idaho 213, 216 (2005))
20 (citation omitted).

21    A breach of contract occurs when a party fails to
22 perform, without legal excuse, a promise required of it by the
23 terms of a contract.  <u>Idaho Power Co. v. Cogeneration, Inc.</u>, 134
24 Idaho 738, 747 (2000).  An "insurer has a duty to provide
25 coverage if conditions are met under the insurance contract."
26 <u>Robinson v. State Farm Mut. Auto Ins. Co.</u>, 137 Idaho 173, 179
27 (2002).  Under Idaho law, "[t]he burden of proving the existence
28 of a contract and fact of its breach is upon the plaintiff."

1   Idaho Power Co., 134 Idaho at 747.

2        The insurance contract here clearly states that prompt
3   notice is required in the event of an accident, claim, suit, or
4   loss and that in the absence of such prompt notice, Oregon Mutual
5   has no duty to provide plaintiff coverage under the policy.  The
6   court cannot find, and plaintiff does not argue that there is,
7   any ambiguity in this language.  See Axis Surplus Ins. Co. v.
8   Lake CDA Dev. LLC, No. CV-07-505, 2008 U.S. Dist. LEXIS 69020, at
9   *5-6 (D. Idaho Sept. 10, 2008) (finding similar language in a
10  builder's risk insurance policy "unambiguously require[d] prompt
11  notice of loss or damage").  At issue are whether plaintiff
12  complied with this provision and the effect of a failure to
13  comply under Idaho law.

14        Viani v. Aetna Insurance Co., 95 Idaho 22 (1972),
15  overruled on other grounds by Sloviaczek v. Estate of Puckett, 98
16  Idaho 371 (1977), involved an insurance policy that required the
17  insured to provide the insurer with written notice of an accident
18  "as soon as practicable."  Id. at 26.  The insured in that case
19  had waited until after a judgment against him became final before
20  contacting his insurer to seek coverage.  Id.  The court held
21  that this complete failure to notify his insurer constituted a
22  breach of the condition precedent found in the insurance policy.
23  Id. at 28.

24        Having reached this conclusion, the court then had to
25  determine the effect of this breach.  Although recognizing that a
26  previous Idaho Supreme Court decision had announced that
27  "[v]iolations of conditions by the assured will not release the
28  insurer unless it is prejudiced by the violation," id. (quoting

9

1  <u>Leach v. Farmer's Auto. Interinsurance Exch.</u>, 70 Idaho 156, 160

2  (1950)), after surveying the approaches of various states, the

3  court announced that "[t]o settle the state of Idaho law [it had]

4  concluded the majority rule as expressed in the Nevada and

5  Washington cases is the better reasoned rule and is fair to the

6  various interests." <u>Id.</u> at 30.[2]  The majority rule referred to

7  provided that "lack of prejudice to the insurer was immaterial

8  where the insured failed to perform the condition precedent of

9  giving notice of the suit . . . within a reasonable time," <u>id.</u> at

10  29, and that "the failure to give a reasonable timely notice of

11  the accident . . . will release the insurer from the obligations

12  imposed by the contract, although no prejudice may have

13  resulted," <u>id.</u> at 28 (quoting <u>Sears, Roebuck & Co. v. Hartford</u>

14  <u>Accident & Indem. Co.</u>, 313 P.2d 347, 353 (Wash. 1957)).

15       In adopting this rule, the court noted that the rule

16  balanced the competing interests of the insurer and insured.  On

17  one hand, the court recognized that "an insurer has certain

18  business interests which it is entitled to protect" and is

19  _____

20       [2]   The court acknowledges that Nevada, New York, and
   Colorado, three of the states the <u>Viani</u> court cited as following
21  the no-prejudice rule, have since begun to require insurers to
   show prejudice before disclaiming coverage on late notice
22  grounds.  These changes came about as a result of changes to
   applicable statutes and regulations in those states or an
23  explicit decision by the state supreme court to overrule the
   prior no-prejudice rule.  <u>Las Vegas Metro. Police Dep't v.</u>
24  <u>Coregis Ins. Co.</u>, 256 P.3d 958, 963-64 (Nev. 2011)(explaining
   that the no-prejudice rule was abrogated by regulation); N.Y.
25  Ins. Law § 3420(a)(5) (providing that "failure to give any notice
   required . . . shall not invalidate any claim made by the insured
26  . . . unless the failure to provide timely notice has prejudiced
   the insurer"); <u>Friedland v. Travelers Indem. Co.</u>, 105 P.3d 639,
27  644-49 (Colo. 2005)(overruling prior caselaw establishing no-
   prejudice rule).  Idaho, by contrast, has not enacted any state
28  statutes or regulations that would require a showing of
   prejudice, nor has the Idaho Supreme Court overruled <u>Viani</u>.

1   entitled to ensure that it has the opportunity to investigate and
2   examine all matters relevant to determining coverage.  <u>Id.</u> at 29.
3   The rule the court announced protects insurers in that it "not
4   only recognizes the legitimate business interests of insurers but
5   it also recognizes, and gives effect to, the express provisions
6   of the insurance contract which we are admonished to do by
7   statute."  <u>Id.</u> at 30 (citing Idaho Code § 41-1822).  On the other
8   hand, by requiring notice only within a "reasonable time," the
9   rule also provides insureds with some leeway because it "allows
10  the insured opportunity to offer various excuses for non-
11  compliance as well as a factual determination as to whether
12  notice was given 'as soon as practical' or 'immediately'
13  depending on the specific language of the condition."  <u>Id.</u>
14  Therefore, while prejudice to the insurer is immaterial under
15  Idaho law, to prevail on its motion for summary judgment, Oregon
16  Mutual still must demonstrate that the undisputed facts show as a
17  matter of law that plaintiff violated the prompt notice
18  requirement of the policy.

19      Unfortunately, the case most on point here, <u>Sparks v.</u>
20  <u>Transamerica Ins. Co.</u>,  No. 96-36110, 1998 WL 166282 (9th Cir.
21  Apr. 6, 1998), is an unpublished Ninth Circuit case that this
22  court cannot rely on under the rules of the Ninth Circuit, 9th
23  Cir. Rule 36-3.  In that case, the insured held general liability
24  policies with the insurer that required the insured to notify the
25  insurer "immediately" of any "claim . . . or suit."  <u>Sparks</u>, 1998
26  WL 166282, at *2.  The insured, however, delayed for over two
27  years before notifying his insurer that he had received a letter
28  from the Environmental Protection Agency ("EPA") naming him as a

11

1  potentially responsible party under the Comprehensive
2  Environmental Response, Compensation, and Liability Act.  Id. at
3  *1.

4        Citing Viani, the Ninth Circuit in Sparks held that "a
5  showing of prejudice is not required [under Idaho law] where an
6  insured breaches a notice provision of the policy," without
7  making any distinction between late notice and total lack of
8  notice or discussing how it made the factual determination that
9  the insured's notice was not in compliance with the terms of his
10 insurance policy beyond observing that a "two-year delay in
11 notifying [the insurer] of the initial EPA letter failed to
12 satisfy the notice condition."  Id. at *3-4.  The court then
13 affirmed the district court's conclusion that a delay of almost
14 two years was sufficient as a matter of law to release the
15 insurer from liability.  Id.  Were the court bound to follow this
16 Ninth Circuit precedent, Sparks would lead to the inescapable
17 conclusion that plaintiff's late notice was fatal to his attempt
18 to recover under the policy.

19        Because the court cannot rely on Sparks, however, the
20 court must look to other cases.  Both parties attempt to rely on
21 Axis Surplus Insurance Co.  In that case, Judge Windmill of the
22 district of Idaho found that an insurer who failed to notify his
23 insurer of damage to a retaining wall for almost a year, during
24 which time he tore down the damaged portion of the wall and
25 installed a new one, had not complied with the notice
26 requirements of the insurance policy.  Axis Surplus Ins. Co.,
27 2008 U.S. Dist. LEXIS 69020, at *6.  The court stated that under
28 Idaho law, "[p]rejudice to the insurer is not material" to the

1  question of whether the insured's failure to comply with the

2  notice provision excused the insurer's performance under the

3  policy.  Id. at *7.[3]

4         The parties agree that plaintiff first provided Oregon

5  Mutual with notice of his accident and claim fifteen months after

6  the accident occurred and nine months after he discovered he had

7  been injured in the accident.  Plaintiff argues that his notice

8  was still prompt because he notified Oregon Mutual as soon he

9  discovered that he had an underinsured motorist claim with Oregon

10 Mutual.  (Hoffman Aff. ¶¶ 15-16.)  He explains that he initially

11 believed that the accident had only caused damage to the car he

12 was driving, and that even once he realized that he had medical

13 damages, he did not realize that Fabello's Farm Bureau policy

14 would not cover all of his medical expenses.  (Id. ¶¶ 5-12.)  It

15 was not until he learned that Fabello's policy had a limit of

16 $25,000, less than his medical expenses, that he realized that

17 Oregon Mutual might be required to cover the additional expenses

18

19        [3]    Both parties additionally cite Blue Cross of Idaho
20 Health Service, Inc. v. Atlantic Mutual Insurance Co., No.
   1:09-CV-246-CWD, 2011 U.S. Dist. LEXIS 4892 (D. Idaho Jan. 19,
21 2011).  In that case, the court stated that while a complete or
   late failure to comply with a notice provision may "provide[]
22 grounds upon which an insurer can refuse to honor its . . . duty
   to indemnify," "an insurer may be estopped from relying on a
23 policy defense such as late notice or waive[] its right to do
   so."  Id. at *46.  Because the court found that by its conduct,
24 the insurer had waived its right to assert late notice as a
   defense to its duty to indemnify, and "also [was] estopped from
25 relying on the policy defense of late notice," the court
   explicitly declined to reach the issue of prejudice with respect
26 to plaintiff's late notice, although it noted that it might
   ultimately be relevant to the separate bad faith claim.  Id. at
27 *46 n.15.  It also did not address the question whether
   plaintiff's six-month delay before providing notice of suit was
28 in fact a violation of the notice requirement of the policy in
   question.

                                    13

under his underinsured motorist policy.  (<u>Id.</u> ¶ 12.)  Upon that realization, he immediately contacted Oregon Mutual.  (<u>Id.</u> ¶¶ 15-16.)

Whether notice is prompt in accordance with the terms of the policy is a question of fact.  <u>Viani</u>, 95 Idaho at 30.  Because plaintiff contacted Oregon Mutual <u>before</u> entering into a settlement with Farm Bureau, the facts in this situation are unlike those in <u>Viani</u>, where notice of the suit was not given to the insurer until after judgment was entered.  <u>Id.</u> at 26.  They are also unlike the facts in <u>Axis</u>, where the plaintiff completely replaced his damaged property before notifying his insurance company.  <u>Axis</u>, 2008 U.S. Dist. LEXIS 69020, at *7.  In <u>Axis</u> and <u>Viani</u>, the judges were able to hold as a matter of law that the plaintiffs had not complied with the notice provisions of their policies because no meaningful notice ever occurred.  That is not the case here.

Plaintiff has introduced facts which viewed in the light most favorable to him suggest that he contacted Oregon Mutual as soon as he realized that he had a claim under his underinsured motorist provision.  Whether that notice was prompt in accordance with the language of his policy is a question of fact that must be decided by a jury.

Having determined that there is a genuine issue for trial as to whether plaintiff complied with the prompt notice requirement, the court must also address Oregon Mutual's contention that coverage did not exist because plaintiff was not driving a covered vehicle at the time of the accident.  At the time plaintiff initially notified Oregon Mutual of the June 2010

14

1   accident, he could no longer remember why he had decided to drive
2   his girlfriend's vehicle that day.  When asked if it was perhaps
3   because of a problem with his car, he stated that he did not
4   believe that was the case.  However, several days later, he
5   informed Oregon Mutual that his girlfriend had been able to
6   refresh his memory and he now remembered that he had driven her
7   car because his own car had had a flat tire.  While not
8   dispositive, a reasonable jury presented with these facts could
9   conclude that plaintiff was driving a covered vehicle at the time
10  of the accident.

11          There is at least a genuine issue for trial as to
12  whether he complied with the policy's prompt notice requirement
13  and whether coverage existed.  Accordingly, the court may not
14  grant summary judgment on the breach of contract claim.

15          B.   Breach of the Implied Covenant of Good Faith and
16               Fair Dealing and Insurance Bad Faith

17          At oral argument, plaintiff confirmed his intention to
18  dismiss his claims for breach of the implied covenant of good
19  faith and fair dealing and for insurance bad faith tort.  (See
20  also Opposition at 18 n.3 ("Dr. Hoffman will not pursue a cause
21  of action for the breach of the implied covenant of good faith
22  and fair dealing or the insurance bad faith tort.").)
23  Accordingly, the court will grant defendant's motion for summary
24  judgment as to these claims.

25          IT IS THEREFORE ORDERED that defendant's motion for
26  summary judgment be, and the same hereby is, DENIED as to
27  plaintiff's claim for breach of contract.

28          IT IS FURTHER ORDERED that defendant's motion for

summary judgment be, and the same hereby is, GRANTED as to

plaintiff's claims for breach of the implied covenant of good

faith and fair dealing and insurance bad faith tort.

DATED: May 29, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE